UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM FOREVER PROCUREMENT LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SILFAB SOLAR INC. and SILFAB WA INC.,<br><br>　　　　　　　　　　Defendants. | Case No.: 24-cv-2452 W (BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER 28 U.S.C. § 1406(a) AND RULE 12(b)(3) [DOC. 8]** |

　　　　Pending before the Court is Defendant Silfab Solar Inc.'s motion to dismiss Plaintiff Freedom Forever Procurement LLC's complaint under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). [Doc. 8]. Plaintiff opposes. [Doc. 10].

　　　　The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, the Court **DENIES** the motion to dismiss [Doc. 8].

///

///

## I. BACKGROUND

Plaintiff Freedom Forever Procurement (FFP) is a residential solar power company that works with independent authorized dealers to market its products to homeowners. (*Compl.* [Doc. 1] at ¶ 11.) To create its designs and install its systems in homes, FFP purchases parts from suppliers, such as Silfab. (*Id.* at ¶ 13.) Defendant Silfab is a supplier of high-efficiency solar modules and sells them throughout the United States and Canada. (*Id.* at ¶ 9.)

FFP asserts that it had done business with Silfab over the past few years to ensure it could meet customer demand. (*Id.* at ¶ 16.) FFP alleges that the transactions generally only discussed quantity of solar modules and would usually happen over the phone or by email. (*Id.* at ¶ 20.) Following up on the orders, FFP would then issue a blanket purchase for the solar modules along with purchase orders detailing price, terms, deadlines, shipment locations, and shipping dates. (*Id.* at ¶ 21.) Silfab would then issue sale orders confirming the purchases. (*Id.*)

The Complaint alleges that FFP and Silfab had agreed to a sale for 30 containers of solar modules, and on June 4, 2024, Silfab emailed FFP, "Great chatting today. As discussed, please issue PO for 30 containers today . . . at the agreed upon pricing for delivery from now until the end of June." (*Id.* at ¶ 22.) After, FFP issued a blanket purchased order for the solar modules. (*Id.* at ¶ 23.) The Complaint also alleges that on July 19, 2024, FFP and Silfab agreed over the phone to quantities of solar modules over a five-month period. (*Id.* at ¶ 26.) Silfab memorialized the phone conversation in an email. (*Id.* at ¶ 27.) FFP then issued purchase orders for the solar modules, followed by Silfab issuing sale orders confirmations. (*Id.* at ¶¶ 30–32.)

FFP alleges that it relied on its agreements with Silfab to begin designing residential solar energy systems for customers, including representations in customer agreements that the solar energy systems used would be equipped with Silfab specific energy modules. (*Id.* at ¶ 34.) However, FFP asserts that Silfab immediately breached its duty to perform under the agreements, falling short on both July and August shipments.

1  (*Id.* at ¶¶ 36–39.)  As a result, FFP asserts it was forced to breach contracts with its
2  customers and spend significant time and money re-designing its energy systems to
3  account for Silfab's shortfall.  (*Id.*)  On September 5, 2024, Silfab notified FFP that it was
4  experiencing production issues, and was again short for September and October.  (*Id.* at
5  ¶¶ 43–45.)  Altogether, FFP asserts that Silfab agreed to provide at least 116,279 solar
6  modules but only delivered 47,837.  (*Id.* at 46.)

7     To mitigate losses caused by Silfab's delivery shortfalls, FFP alleges it was forced
8  to purchase solar modules from other suppliers, including Q-Cell and Philadelphia
9  modules.  (*Id.*)  Although attempting to mitigate its losses, FFP asserts that the Q-Cell
10 modules were more expensive than under the Silfab agreement, and the Philadelphia
11 modules—though less expensive—could only be used for specific projects.  (*Id.* at ¶¶ 48–
12 49.)  Even so, FFP was forced to breach its contracts with its customers, expend time and
13 money to compensate for the Silfab's supply shortfall, and lost goodwill with customers
14 upset about the delays and changes to their designs.  (*Id.* at ¶¶ 48–50.)

15    FFP then brought this lawsuit in the federal district court under this Court's
16 diversity jurisdiction.  (*Id.* at ¶¶ 4–5.)  The Complaint asserts four causes of action
17 against Silfab: (1) breach of contract; (2) breach of obligation of good faith; (3)
18 promissory estoppel; and (4) negligent misrepresentation.  (*Id.* at ¶¶ 51–77.)  In response,
19 Silfab has filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure
20 12(b)(3) and 28 U.S.C. § 1406(a) asserting that the parties agreed to litigate the action in
21 Canada under a forum-selection clause.  (*Mtn.* at 5–6.)  FFP opposes the motion to
22 dismiss arguing that Rule 12(b)(3) is the incorrect motion to transfer the venue and—in
23 any event—the terms containing the forum selection clause are unenforceable because
24 they were not part of their agreement.  (*Opp'n.* at 10–12.)

25

26 **II.   STANDARD**

27    Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move to dismiss a
28 complaint for improper venue.  Plaintiff bears the burden of demonstrating venue is

1  proper.  *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir.
2  1979).  In considering a motion to dismiss under Rule 12(b)(3), a court need not accept
3  the allegations in the pleadings as true and may consider facts outside the pleadings.
4  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

5       Venue is generally governed by 28 U.S.C. § 1391.  Under subsection (b), venue
6  exists in: (1) a judicial district in which any defendant resides if all defendants reside in
7  the same state, (2) a judicial district in which a substantial part of the events or omissions
8  giving rise to the claim occurred, or (3) any judicial district in which any defendant is
9  subject to the Court's personal jurisdiction if there is no district in which the action may
10 otherwise be brought.  28 U.S.C. § 1391(b).

12 **III.   DISCUSSION**

13      Silfab has moved to dismiss the suit on the grounds that FFP is bound by a forum
14 selection clause that requires this action to be heard by a Canadian tribunal.  (*Mtn.* at 7.)
15 FFP has opposed the motion, arguing (1) that Rule 12(b)(3) and 28 U.S.C. § 1406(a) are
16 improper procedurally and (2) the Terms and Conditions are not part of the agreement.
17 (*Opp'n* at 12–20.)

18      FFP argues that a party cannot enforce a forum selection clause under Section
19 1406(a), only under Section 1404(a).  To support their argument, FFP cites the case *Atl.*
20 *Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) (hereinafter
21 "*Atlantic Marine*"), and points out that the Supreme Court disagreed that a party could
22 enforce a forum-selection clause by seeking a dismissal of the suit under Section 1406(a)
23 and Rule 12(b)(3).  (*Opp'n* at 12:16–25.); *Atl. Marine*, 571 U.S. at 55.

24      In response, Silfab argues *Atlantic Marine* stands for the proposition that Section
25 1404(a) has no application when a party seeks to litigate the case in non-federal forum.
26 (*Reply* at 8:1–7) (quoting *Atlantic Marine*, 571 U.S. at 49) ("the appropriate way to
27 enforce a forum-selection clause pointing to a state or foreign forum is through the
28 doctrine of *forum non conveniens*.").

In *Atlantic Marine*, the Supreme Court was confronted with whether a party could enforce a forum-selection clause by a motion to dismiss under 28 U.S.C. § 1406(a) or Rule 12(b)(3). *Atlantic Marine*, 571 U.S. at 52. Before the Court was a forum-selection clause that required a dispute between the parties to be litigated in the Eastern District of Virginia. *Id.* at 53. The party seeking to enforce the forum-selection clause made the motion under Section 1406(a) and Rule 12(b)(3). *Id.* at 55. The Court disagreed, finding that when venue is challenged under Rule 12(b)(3), a court must first determine whether venue is proper under the federal venue statute. *Id.* at 56. If the venue falls within that statute, then Rule 12(b)(3) has no application; if not, then the court can either dismiss or transfer the venue under Section 1406(a). The Court then stated that

> [w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in the [venue statute]. As a result, a case filed in a district that falls within [the venue statute] may not be dismissed under [Section] 1406(a) or Rule 12(b)(3).

*Id.*

Under the federal venue statute, a proper venue is: "(1) a judicial district in which any defendant resides, if all defendants are residents of the same State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction . . . ." 28 U.S.C. § 1391.

FFP asserts the Southern District of California is a proper venue and Rule 12(b)(3) only dismisses actions where venue is *improper*. (*Opp'n* at 13:1–7.) To that end, FFP asserts that Section 1391(b) is applicable here because Silfab negotiated and entered into the agreement in this district. (*Id.* at 13:24–28.) Additionally, FFP issued Purchase Orders for the solar modules from this district. (*Id.* at 14:1–5.) In response, Silfab argues that FFP's "sole basis is the assertion that Freedom discussed orders with Canadian entity Silfab over the telephone and via email and Freedom is located in Temecula, California."

(*Reply* [Doc. 11] at 8–9.)  However, the Court finds the negotiations over the phone and the Purchase Order are a significant portion of events giving rise to this case because this suit is based on the contract the parties negotiated over the phone and the subsequent confirmations and purchase orders sent between the parties.  *See P2F Holdings, LLC v. Vicini America, Inc.*, No. SACV 16-1399-CJC (SKx), 2016 WL 9343899 at *5 (C.D. Cal. 2016).

Because a significant portion of the events giving rise to this suit took place in the Southern District of California, venue is proper under the federal venue statute. Therefore, a motion to dismiss based on improper venue must be denied.  *Atlantic Marine*, 571 U.S. at 56 ("As a result, a case filed in a district that falls within [the venue statute] may not be dismissed under [Section] 1406(a) or Rule 12(b)(3).").

Silfab argues that the *Atlantic Marine* held that Rule 12(b)(3) is the proper mechanism for enforcing a forum-selection clause that points to a non-federal forum. (*Reply* at 8:5–7.)  However, that is not what *Atlantic Marine* held, as the Court specifically stated "[i]f venue is proper under federal venue rules, it does not matter for the purpose of Rule 12(b)(3) whether the forum-selection clause points to a federal or a nonfederal forum." *Id.* at 60.

Rather, where a party seeks dismissal to a nonfederal forum, the correct mechanism is the doctrine of *forum nonconveniens*.  *Id.* ("Instead, the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.").  The Court differentiated between Section 1404(a) and the doctrine of *forum non conveniens* as a whole by pointing out "Section 1404(a) is merely a codification of the doctrine . . . for the subset of cases in which the transferee forum *is within the federal court system*; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* (emphasis added) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007) ("For the federal court system, Congress has codified the doctrine . . . .").

However, "[f]or the remaining set of cases calling for a nonfederal forum, [Section] 1404(a) has no application, but the residual doctrine of *forum non conveniens*" applies. *Id.* at 61. Additionally, "because both Section 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the say way they evaluate a forum-selection clause pointing to a federal forum." *Id.* Those factors include

> private interests [such as] "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Ibid.* (internal quotation marks omitted). The Court must also give some weight to the plaintiffs' choice of forum. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

*Atlantic Marine*, 571 U.S. at 62, n. 6.

Here, Silfab asks the Court to analyze their motion as one made under the doctrine of *forum non conveniens*. However, because Silfab made their motion under Section 1406(a) and Rule 12(b)(3), they failed to analyze the factors under the *forum non conveniens* doctrine. *See Piper Aircraft Co.*, 454 U.S. at 257. Accordingly, the Court will deny the motion to dismiss. Because Silfab's motion is denied on procedural grounds, the Court does not reach the second issue of whether the forum selection clause is part of the contract.

///

///

///

## IV.   CONCLUSION & ORDER

For the reasons stated above, Silfab's motion to dismiss this action under Rule 12(b)(3) and 28 U.S.C. § 1406(a) [Doc. 8] is **DENIED**.

**IT IS SO ORDERED.**

Dated:  April 14, 2025

Hon. Thomas J. Whelan
United States District Judge